## J. I. Case Threshing Machine Company v. Commonwealth For Use, et al., for Laurel County.

(Decided October 30, 1917.)

### Appeal from Laurel Circuit Court.

1. Counties—Contract for Benefit of County—Fiscal Courts—Delegation of Powers.—The fiscal court of a county cannot delegate its powers conferred upon it by law in making a contract for the benefit of the county to others composing a committee, or give authority to the committee to exercise its judgment and discretion in the making of the contract, including its terms, etc., as this would be a violation of the trust imposed upon the court as guardian of the interest of the public, and would substitute the judgment and discretion of the committee for that vested in the court by the law for the safety of the people.

2. Counties—Contracts—Ratification.—Although a contract made ostensibly by a county may have been illegally entered into, still if it were one such as the county through its constituted authority might have made, such constituted authority may ratify it so as to be binding on the county, provided the ratification is made and done in the manner and form required in the making of such contract.

3. Principal and Agent—Agent of Municipal Corporation.—Persons dealing with agents of a municipal corporation are required to take notice of the authority of such agent or agents.

4. Counties—Contracts.—The fiscal court of Laurel county, as shown by its records, determined to purchase certain machinery for the working of the public roads, and without fixing any price to be paid appointed a committee to make the purchase, which it did, and without reporting its action the county judge issued a warrant for the price, which was paid by the county treasurer, and there was no further action taken in any manner by the fiscal court. The attempted contract is not binding upon the county, but is

illegal and void, and not having been ratified by the fiscal court in the legal way, the county may rescind and recover from the seller of the machinery the amount of the warrant.

C. C. BAGBY and CHENAULT HUGUELY for appellant.

J. K. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is an appeal by appellant and defendant below, J. I. Case Threshing Machine Company, from a judgment of the Laurel circuit court against it in favor of the appellee, Laurel county (plaintiff below), for the sum of $2,246.60.

The facts out of which the litigation grew are that the fiscal court of the county, at a session held on October 19, 1912, made these entries upon its order book: "Motion made and seconded, to buy combination traction engine and roller, the yea and nay vote being taken as follows (vote given). Ordered that J. C. Napier, G. B. Angel and E. A. Chilton be appointed committee to purchase said engine, etc."

The committeemen, Angel and Napier, were members of the fiscal court, the former being county judge of the county. At the time the order was entered the court adjourned until February 14, 1913. On December 21, 1912, the committee so appointed entered into a written contract with the defendant for the purchase of one 50-horse power traction engine with fixtures, road grader, a road drag, a lifting jack and water tank, for which it agreed to pay on behalf of the county upon terms specified the sum of $2,390.00, the contract providing, however, that if payment should be made upon the delivery of the machine, which was to be by June 1, 1913, a discount of $143.40 would be deducted from the contract price.

The machinery arrived some time during the latter part of May, 1913, and immediately thereafter the county judge issued a warrant upon the county treasurer for the contract price less the discount, which warrant was countersigned by the road engineer and paid by the treasurer to the defendant. The machinery was taken charge of by the road engineer and was operated for a month and a half or two months upon the public roads of the county, since which time it has been housed in a place provided and owned by the county.

This suit was afterward filed by the county attorney on behalf of the county to recover the sum paid to the defendant upon the ground that the pretended contract entered into with the defendant by the committee was unauthorized, illegal and void so far as the county was concerned, it being alleged, which fact was proven, that the machinery had theretofore been tendered to the defendant.

The defense consisted of a denial and a plea of ratification growing out of what defendant claimed was the acceptance of the machinery by the county and using it upon the public roads for the time indicated.

There is no complaint but that the machinery fully measured up to all representations, and is suitable in every way for the performance of the work for which it was intended. There was never any subsequent order made by the fiscal court with reference to the machinery or its purchase in any way whatever, the committee having made no report to the fiscal court either for its adoption or rejection, and there is nothing appearing to show that the fiscal court at any time, expressly or impliedly, adopted or approved any of the terms of the alleged contract. Under these facts, it is insisted by the county that the alleged contract, although attempted to be made in its name by the committee, is wholly void and of no binding force, while defendant insists that although the contract in its inception was irregular and might have been repudiated by the county, it has ratified the contract because of the action of the road engineer in unloading and using the machinery with the knowledge of the county judge and other members of the fiscal court. So, the two questions presented are (1) whether the contract as entered into is binding upon the county, and (2) whether, if not, the facts show such a ratification as to cure the defects, if any, in the execution of the contract and to render the county liable thereon.

In discussing these questions it will be well to bear in mind that the principles of law applicable to the making of contracts generally between individuals are in some respects different from those made on behalf of and for the benefit of the public. In the former case the public is not interested, and self-interest of the individual is deemed a sufficient protection against hard bargains and fraudulent practices. In the latter case, to substitute as much as possible for the protection which self-interest furnishes to the individual, the statute re-

quires and the courts hold that those contracting for and on behalf of the public must do so in the manner which the law directs.

The maintenance of the public roads, under our statute, is exclusively delegated to the fiscal court of the county. To that end it may purchase machinery such as is involved in this case (section 4335, Ky. Statutes), but the statute conferring the power expressly provides that "no contract for the purchase of stone crushers, road rollers or traction engines shall be valid unless the fiscal court shall have approved the same and endorsed its approval on such contracts by the signature of the county judge and the clerk thereof."

Similar provisions existed in former statutes conferring jurisdiction upon the fiscal court in the maintenance and management of the public roads or in contracts concerning other public matters. It has many times, and with uniform consistency, been held by this court that municipal bodies, such as is the fiscal court in this case, charged with the performance of public duties, may not delegate the performance of such duties to others so as to bind the public for whom the municipal body was acting. Hides & Goose v. Joyes, 4 Bush 470; Murry v. Tucker, 10 Bush 244; Milliken v. Gillum, 135 Ky. 280; Floyd County v. Owego Bridge Co., 143 Ky. 693; Kozee v. Commonwealth, 139 Ky. 66; O'Kelly v. Lockwood, 154 Ky. 544; and Carter v. Kruger & Son, 175 Ky. 399.

While the subject of highways was not involved in all the cases referred to, in many of them they were, and in others questions concerning the right of the governing authority of a municipality to delegate its contractual powers upon a subject matter about which it could contract were involved. A specific reference to a few of the cases will be sufficient to illustrate this court's position upon the point in hand.

In the Milliken case, after holding that the fiscal court must speak only through its records, and that extraneous evidence to explain the meaning of its orders will not be allowed, said: "The fiscal court cannot delegate to an agent the discretion with which the law clothes it."

In the Kozee case it is said: "It was the duty of the fiscal court to determine for itself the necessity for the bridges, the location and cost thereof, and, after determining this, to appoint a commissioner to supervise

the erection thereof. It could not delegate to an agent
or agents the discretion with which the law clothes it.''

In the O'Kelly case, in speaking directly to the point,
the rule is announced by the court thus:

''The fiscal court has no power to delegate to an
agent the authority to do anything which involves the
exercise of a discretion which by law is confided to it,
and if the orders of the court directing the commissioner
to enter into the contract with O'Kelly involved any such
discretion upon the part of the commissioner, or confided
to him the doing of anything which necessitated the ex-
ercise of his judgment, then they are void. The order di-
recting Malin as commissioner to make the contract, and
take the bond of O'Kelly was indefinite and vague as
to the powers conferred upon the commissioner; it neither
referred to the bid of O'Kelly, nor to the plans and speci-
fications under which that bid was made; it did not di-
rect the terms upon which the contract was to be made,
nor did it indicate the nature or amount of the bond
which he was to take and accept. Under the terms of
that order the action of the commissioner necessarily
contemplated the exercise of his own judgment and dis-
cretion about these matters, and was, therefore, void.''

In the Owego Bridge Company case there was in-
volved the sum of $15,568.00, claimed by the bridge com-
pany to be due it for the construction of three bridges
in Floyd county under contracts entered into by the
bridge company with a committee of four appointed by
the fiscal court with authority ''of receiving estimates
and bids for the construction of each and all of said
bridges, and they (the committee) are hereby authorized
and empowered to make, enter into and conclude all nec-
essary contracts and agreements for the erection and
completion of any and all of said bridges, and they are
hereby authorized to make final and complete settlement
for any one or all of the said bridges, and they will report
their acts hereunder to this court.''

The committee, under that authority, contracted for
the three bridges, which were constructed, and it offered
to file with the fiscal court a report showing that fact, as
well as the prices agreed to be paid, but the court de-
clined to permit the report to be filed and no record was
ever made filing the report, and of course none accept-
ing it. It was shown that the work was efficiently done,
and that the prices were reasonable; but because the con-
tracts had neither been made by the fiscal court nor

ratified by it on its record the county was held not liable. However, upon the equitable principle that courts will require justice to be done between litigants, the bridge company was permitted to tear up the bridges and appropriate the material. In setting forth the general rule, the court in that case said:

"In other words, we have a case where the official court which alone is clothed with the power to contract for the county has completely abdicated its power and turned it over to a committee, with full rein to construct one of the bridges wherever they pleased, and to determine the height and width of the bridges, and to expend any amount of money, in their discretion, and to make it a liability on the county. The general rule is that fiscal courts or other county boards having charge of county affairs, may, in the exercise of the powers conferred upon them, appoint agents to discharge ministerial duties not calling for the exercise of reason or discretion, but cannot go beyond this and delegate to others the discharge of duties which call for reason and discretion and which are regarded as public trusts. (House v. Los Angeles County, 104 Cal. 73; Scollay v. Butte County, 67 Cal. 247.)

"But it is insisted for appellee that the act of building bridges is purely ministerial and not judicial; and that, therefore, the fiscal court could lawfully confer the power given in the order referred to. The principle, however, is not restricted merely to judicial acts; it applies to all acts which involve the exercise of discretion; it matters not whether they be considered ministerial or quasi legislative. In the case before us the commissioners were not directed merely to see to the execution and carrying out of contracts which the fiscal court had directed to be executed, but they were given unlimited power to determine the amount of the expenditure. In reaching the conclusion as to the requisite amount the commissioners necessarily exercised a discretion, and a discretion which the fiscal court alone could exercise. If the order in question could be held valid to the extent of appellee's claim in this case, it could, for the same reason, be held valid even had the expenditure amounted to $50,000.00 or $100,000.00. In a case like this, it is immaterial whether the work is well done or not, or whether the bridges are of the same character as the fiscal court itself would have selected; or whether the commissioners did better for the county than the fiscal court would have

done.  If the commissioners were without authority to contract for the bridges, and the fiscal court has never ratified or approved the contracts which it made, or accepted the bridges, it follows that the contractor cannot legally demand the payment of the contract price.''

We can see no difference in principle between the cases referred to and the instant one.  As a matter of fact, in this case, even if it had been competent for the committee to have bound the county, it surely could have gone no further than the order conferring the authority upon it; it did, however, purchase other and additional machinery to that mentioned in the order.  Like the cases, *supra,* no prices or terms were fixed in the order appointing the committee purporting to vest it with authority, but it was simply a delegation by the fiscal court to others of its judgment and discretion with which the law clothed it in looking after and protecting the public interest.

It is a fundamental principle in the law of contracts that no one may ratify it except the one who could have in the first instance entered into it.  As no one but the fiscal court, as a court, could have made the contract in question, then no one but the fiscal court, as such court, could ratify it so as to bind the county.  This was held in the Owego Bridge Company case, *supra,* as will be seen from the excerpt taken therefrom.  Additional authorities upon this point are Murphy v. City of Louisville, 9 Bush 139; Trustees of Bellevue v. Hohn, 82 Ky. 1; Floyd County v. Allen, 137 Ky. 575; Allen County v. U. S. Fidelity Co., 29 Ky. Law Rep. 360; Carter v. Kruger & Son, 175 Ky. 399.

The rule as gathered from the authorities, including the cases referred to, is that a contract with a municipality which might have been lawfully entered into at the beginning may be ratified by the governing authority of the municipality, provided such ratification is in due form, but a contract wholly *ultra vires* may not be ratified in any manner.

In this case, as the fiscal court could have entered into the contract for the purchase of the machinery in question, it also could have ratified the contract by appropriate orders, but in no other way.  There is nothing in the record showing such ratification, or any attempt to do so, and under the rule so long adhered to and so essential to the safeguarding of the public interest and the guaranteeing of the proper discharge of the trust

reposed in the fiscal court, the county, in this case, is not liable, and the contract, or rather the attempted contract, is void, and the payment of the warrant in satisfaction of it was and is illegal.

The judgment of the court directed, as the county conceded should be done, that the defendant might take possession of the machinery, which is not only authorized by the fundamental principles of justice, but authority for it is found in the Owego Bridge Company case, *supra*.

The defendant relies upon the cases of Milliken v. Gillum, *supra*; Nicholasville Water Company v. Town of Nicholasville, 18 Ky. Law Reporter 492, and City of Providence v. Providence Electric Light Company, 122 Ky. 237, in substantiation of its contention that the county having used the machinery as it claims ratified the contract and is estopped from insisting upon its invalidity. An examination of those cases, however, will reveal a very perceptible difference between the principles therein held and the one here involved.

From excerpts taken from the Milliken case herein it will be seen that the general rule restricting the power of fiscal courts and municipal bodies from delegating their authority is fully recognized; but in that case the fiscal court had appropriated a fixed sum which it authorized its commissioner to expend upon the construction of a bridge, and in .addition it would appear from the opinion that his action in the matter had been appropriately ratified. While this is not expressly stated, it is broadly intimated. Whether so or not, the discretion of the fiscal court as to the amount of money that it would expend for the contemplated purpose was exercised by it when it fixed the sum in its order.

The question involved in the other two cases relied upon was not one of authority to make contracts, but was one of the legal capacity of one of the contracting parties to make the contract, or rather to engage in the business to which the contract related. The party contracting with the city in the last two cases was attempting to exercise a franchise which had not been validly granted, and to this extent it had no right to engage in the business; but that could create no defense to the city in a suit upon a contract which it had entered into for the furnishing of water and lights and which had been furnished, although the one who furnished them was operating under an illegal exercise of a franchise.

As well contend that one could not be bound upon an executed contract entered into with an infant upon the ground that the latter was incapacitated to contract. There was no question in any of those cases of the delegation of authority to make the contract, nor the right of the city to contract upon that particular subject matter. They are clearly distinguishable from the principle involved in the instant case. The alleged contract here involved being void, the county had the right to rescind it and to recover the sum paid under it.

If it should be said that the rule as applied herein permitting the county to maintain the suit and to recover the sum paid to the defendant is harsh and at least superficially unjust, the answer is to be found in the language of Judge Dillon in his valuable work on Municipal Corporations, as quoted by this court in the case of Trustees of Bellevue v. Hohn, *supra*, to this effect:

"It is a fundamental principle, says Judge Dillon, that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract. Those dealing with an agent of a corporation must show the extent of his authority."

See, also, Perry County v. Engle, 25 Ky. Law Rep. 813; Floyd County v. Owego Bridge Company, *supra.*

The judgment appealed from being in accordance with the views herein expressed, it is affirmed.