# Jefferson County Fiscal Court v. Thomas, Constable, et al.

Jan. 20, 1939.

As Modified on Denial of Rehearing June 23, 1939.

Churchill Humphrey, Judge.

**460**

Lawrence S. Grauman, County Attorney, and Robert L. Sloss, Assistant County Attorney, for appellant.

Eugene R. Attkisson and Attkisson & Attkisson for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

In 1932 the General Assembly enacted Chapter 147, Acts of 1932, which is now incorporated in Sections 1079, 1083a-1 et seq. of the Kentucky Statutes. This Act provided that constables should receive a salary of $200 a month and deputy constables $125 a month, but provided that in no event should the sums paid to said officers exceed the fees paid in on account of services rendered by them. As a practical matter, the Act merely limited the amount which a constable could earn from fees to $2,400 per year and the amount which a deputy constable could earn from fees to $1,500 per year. The constitutionality of the 1932 Act was sustained by this court in the case of Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11.

Chapter 96 of the Acts of 1938 amended and reenacted subsections 5 and 9 of the Act of 1932 and is now contained in Kentucky Statutes, Sections 1083a-5, 1083a-5a and 1083a-9. This amendatory Act provides an outright salary of $2,400 per year to be paid each constable out of the general fund of the county and fixes the salary of deputy constables at $2,100 per annum, provided the amount paid to any deputy constable for any month should not exceed the amount paid into the general fund of the county by the deputy constable during the preceding month. It is further provided that the Act shall be retroactive and shall apply to the present official term of all constables and deputy constables. Both the original Act and the amendatory Act applied

only to counties in the State having a population of more than 250,000, the practical effect of this being to apply the Act only to Jefferson County.

The Jefferson County Fiscal Court filed this action under the Declaratory Judgment Act, Civil Code of Practice, Section 639a—1 et seq., against the constables and deputy constables and also against the recorders and deputy recorders, seeking a declaration of rights alleging that the 1938 Act was unconstitutional because (1) it violated Sections 59 and 60 of the Constitution as being special and local legislation; (2) it violated Section 51 of the Constitution in that the title of the Act is not broad enough to cover the provisions regulating salaries of constables and deputy constables; (3) that it violates Sections 161 and 235 of the Constitution in that it applies to officeholders in office at the time of the passage of the Act and is an increase of compensation as to those officers during their term of office; and (4) that it is unconstitutional in that it attempts to give the recorder judicial power in conferring on him authority to release wages held under a garnishment, and that it violates the general law requiring justices of the peace to act as clerks of their courts by giving such power to the recorder. We will consider these contentions in order.

(1) Both the 1932 Act and the 1938 Act contained a preamble setting forth facts justifying the classification of counties containing a population in excess of 250,000 for the purposes of the legislation contained in the Act. The petition in this action put into issue the truth of the facts set forth in the preamble to the 1938 Act and affirmatively alleged that in other counties in the State the conditions set forth in the title or preamble exist in a fair, comparative and similar degree to those existing in counties having a population in excess of 250,000. It is insisted that the trial court erred in sustaining demurrer to this paragraph of the petition and that it should have heard evidence as to the truth of these allegations. In support of this contention appellant cites numerous cases from this court laying down the rule that where the Constitution limits the right of the Legislature to act to certain factual situations only, it is the duty of the court to determine the existence or non-existence of the facts authorizing legislative action; that the validity of the classification made by this Act depended upon the correctness of the facts recited in the Act as a basis for justifying the classification and that

the court should have heard evidence as to the truth or falsity of those facts.

We are of the opinion, however, that the case of Shaw v. Fox, supra, is determinative of this question. The Act of 1938 is merely an amendment of the 1932 Act. The Shaw Case upheld the validity of the original Act and decided that the classification therein made was reasonable and not violative of Sections 59 and 60 of the Constitution and, as long as that decision stands, it is conclusive of the question of classification as to all purposes embraced within the Act. The amendatory Act of 1938 merely enlarges and broadens the purposes and objects of the original Act; consequently, the reasonableness of the classification adjudicated by this court in the Shaw Case as to the original Act holds good for the amendatory Act.

Appellant comments on the manner in which Shaw v. Fox, supra, is practiced as a persuasive equity why this court should reconsider that decision or at least decide that the lower court should have considered the truth or falsity of the factual situation recited in the preamble of the 1938 Act for the purpose of determining its validity. However, we will assume that this court felt itself fully advised in that case and that the case had been so practiced that all matters necessary to the proper determination of the question were fully before it. This court has power, in passing on questions affecting the public interest, to control procedure to the end that cases before it shall be adequately, efficiently and in good faith presented, and we will assume that it exercised that power in that case.

Especially are we loath to question the correctness of the decision in Shaw v. Fox, supra, when a casual inspection of the Act makes so plainly apparent the likelihood of the correctness of the legislative finding or assumption of the natural and distinctive reasons for the classification made in the Act. We adhere to the decision in that case and are of the opinion that it is conclusive against this contention of appellant.

This conclusion we have reached is also decisive of a number of other contentions made by appellant, such contentions being (a) that the Act violates Sections 59 and 60 of the Constitution because there is a general law, Kentucky Statutes, Section 1733, providing for payment

of constables' fees; (b) that the fees collected by a constable acting through deputies belong to the office of constable and the Legislature had no power to allocate all fees earned by the office of constable (through deputy constables) to the payment of salaries of deputy constables alone; and (c) that the county cannot be required to pay an outright salary of $200 per month to a constable where fees collected by him do not amount to that much.

A legal classification having been made by the 1932 Act as to counties containing a population of more than 250,000 for the purpose of legislation as to the payment of constables and deputy constables therein, all general laws pertaining to such payment cease to be operative (as to the payment of such officers) at the will of the Legislature. Any law thereafter enacted as to the method, manner and amount of payment of constables and deputy constables in such counties is valid unless it contravenes some other provision of the Constitution.

It is not alleged in the petition that the factual situation upon which the classification was approved in Shaw v. Fox, supra, has materially changed. If it has not, and we assume it has not from the absence of an allegation to that effect, then the decision in Shaw v. Fox is controlling in the present case. Reliance upon the principle announced by the Supreme Court in Chastleton Corporation v. Sinclair, 264 U. S. 543, 44 S. Ct. 405, 68 L. Ed. 841, and similar cases, is not justified. In those cases it appeared that a changed condition existed. Here it does not.

(2) The only portion of the title of the 1938 Act having any bearing on the payment of salaries is as follows:

"An Act to amend and re-enact subsections five (5) and nine (9) of Section 1083a of Carroll's Kentucky Statutes * * * by providing * * *; for the payment of the salaries provided by law for the officers of constable in the said counties."

Appellant contends that the language of the title was not sufficiently broad either to justify the fixing of the compensation of constables at an outright salary of $2,400 or to justify increasing the salary of deputy constables from $1,500 per year to $2,100 per year. As to this first contention, we are of the opinion that the title

is sufficient. The 1932 Act provided a salary of $2,400 per year for the constables and we think the above quoted language of the title sufficiently broad to put anyone on notice that the 1938 Act was intended to legislate for the payment of that salary. It is true that the 1932 Act limits the amount to be paid to any constable to the amount paid in to the general fund of the county by him. Nevertheless, his salary is fixed and designated by the Act as $2,400 per year and the title of the Act is reasonably sufficient to give notice that the Act intends to legislate for the payment of the maximum salary fixed by the 1932 Act. There is some logic and reason in appellant's contention that the title was only broad enough to serve notice that the salary to be paid the constable was that salary ''provided by law'' and that the salary ''provided by law'' was limited to the amount paid into the general fund by the constable and, as a matter of strict legal construction, this is probably correct. However, this court will not set aside an Act of the Legislature lightly as being a violation of Section 51 of the Constitution, but will uphold it where the language of the title is reasonably sufficient to give a general idea of what the Act was to contain. An examination of many opinions of this court discloses that the policy of the court is that no provision of a statute directly or indirectly relating to the subject expressed in the title, having a natural connection therewith, should be deemed within the inhibition of Section 51 of the Constitution. City of Ravenna v. Boyer Fire Apparatus Co., 218 Ky. 429, 291 S. W. 782. We are of the opinion that this title was reasonably sufficient to give a general idea of the scope of the legislation and to put legislators and the general public on notice that it was to provide for the payment of the $2,400 limit of salary provided for constables under the 1932 Act.

As to that portion of the Act which increases the salary of deputy constables from $1,500 per year to $2,100 per year, we are of the opinion that appellant is correct in this contention and that the title to the Act is not sufficient for that purpose. Certainly it cannot be said that the quoted language of the title is sufficient to put anyone on notice that the salary of deputy constables was to be increased. No mention whatever is made of the payment of deputy constables and no language is used intimating in any way that a salary is to be increased or fixed. Had the title provided that one of the

purposes of the Act was to fix the salary of deputy constables, this would of course have been sufficient, but no reasonable person reading the title could possibly arrive at the conclusion that the deputy constables' compensation was being increased from $1,500 to $2,100 per annum. Where the title to an Act does not give fair and reasonable notice to legislators or to the general public of the nature of the provisions contained in the Act, the Act is unconstitutional as being a violation of Section 51 of the Constitution. Thompson v. Commonwealth, 159 Ky. 8, 166 S. W. 623; Ogden v. Cronan, 171 Ky. 254, 188 S. W. 357; State Athletic Board of Control v. Blake Amusement Co., 249 Ky. 358, 60 S. W. (2d) 950.

It is true, as contended by appellees, that the title of an act is sufficient if it purports to repeal or amend a particular section of the Kentucky Statutes. Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114; Barnett v. Caldwell, 231 Ky. 514, 21 S. W. (2d) 838; Guess v. Linton, 236 Ky. 87, 32 S. W. (2d) 718. The title to the Act in controversy recites that it is an Act to amend and reenact subsection 9 of Section 1083a of Carroll's Kentucky Statutes, which is the section of the 1932 Act dealing with the pay of constables and their deputies. If the title had stopped there, it would have been amply sufficient, under Section 51 of the Constitution, to justify this increase in the compensation of the deputy constables in the body of the Act, but it did not do so. After the specification that the Act was to amend and reenact subsection 9, the legislature chose to provide in this title the manner and extent to which subsection 9 would be amended, specifying that subsection 9 was to be amended by providing "for the payment of the salaries provided by law for the officers of constable in the said counties," thereby choosing to restrict, and specify in the title, the extent to which subsection 9 was to be amended. We have in this State the rule that, although a title may begin with a generally designated subject which is broad enough to justify the provisions of the act relating thereto, yet if this is followed by restrictive language curtailing the scope of such general designation and in such form as to confine the title to legislation within the restrictions only, then the body of the act may go no further than authorized by the restrictive language. South v. Fish, 181 Ky. 349, 205 S. W. 329; Talbott, Auditor v. Laffoon, Governor, 257 Ky. 773, 79 S. W. (2d) 244. We are therefore limited, in considering

the sufficiency of the title, to considering only the sufficiency of the language thereof restricting the generally designated subject. As we have indicated above that the restrictive language employed in this title is not broad enough to cover this increase of compensation to deputy constables, we are of the opinion that the title is not sufficient under Section 51 of the Constitution, and that, therefore, so much of the Act as increases the compensation of deputy constables from $1,500 to $2,100 per year is void.

(3) We come now to appellant's contention that the 1938 Act is void as being in conflict with Sections 161 and 235 of the Constitution insofar as it provides that it shall apply to the present official term of all constables and deputy constables. It is provided in the Act of 1932 that in no event shall the amount paid to any constable for any month exceed the amount paid into the general fund of the county by the constable during the preceding month. It is alleged in the petition that all of the constables during the entire year of 1937 failed during any month to earn and receive as compensation from the office of constable as much as $200 per month. These allegations are denied in the answer and the answer in turn alleges that each of the constables paid into the general fund more than $200 during most of the months of 1937 and during the first four months of 1938 *from the earnings of himself and his deputy constables.* It is not alleged that any one of the constables, himself, earned and paid in more than $200 per month. This pleading must be construed most strongly against the pleader and we are therefore justified in assuming the correctness of the allegations in the petition, that from the time the three constables took office on January 3, 1938, up to the filing of this action, the amount of compensation and salary which each of said constables had earned from their respective offices did not amount to as much as $200 per month. Under the existing law, the constable could not receive as salary more than he earned, was actually earning less than $2,400 per annum, yet, in the face of this, the Act in controversy provides for the payment of an outright salary of $2,400 per year and makes the Act applicable to constables then in office. This is so obviously a violation of the named sections of the Constitution that elaboration is hardly necessary. The case of Anderson v. Burton, 174 Ky. 456, 192 S. W. 519, is squarely in point. Anderson had

been elected superintendent of common schools in November, 1913, and took office in January, 1914. On December 8, 1913, following his election and before qualification, the fiscal court fixed his salary at 8 cents per pupil. On January 13 the fiscal court, in disregard of the previous order, fixed his salary at $1,200 per annum, which resulted in his being paid more during each year of his four-year term than he would have received if he had been paid his salary at the rate of 8 cents per pupil. Suit was filed against him and judgment rendered for this excess, and that judgment was sustained by this court.

Appellant cites cases from Missouri and California reaching a different conclusion from that stated in Anderson v. Burton, supra, but we do not subscribe to the rule announced in those cases and see no reason to depart from the rule announced in Anderson v. Burton, supra. We regard the Act of 1938, insofar as it attempts to make the outright salary of $2,400 payable to the present constables, as an increase in the salary of such constables during their term of office and therefore to that extent violative of Sections 161 and 235 of the Constitution. That an act increasing the salary of an officer during his term of office is void as being in conflict with those provisions of the Constitution is so well settled in this State as to admit of no argument. Webster County v. Overby, 240 Ky. 461, 42 S. W. (2d) 707; Greenup County v. Spears, 259 Ky. 114, 81 S. W. (2d) 905; Greene v. Cohen, 181 Ky. 108, 203 S. W. 1077; Shannon v. Combs, 273 Ky. 514, 117 S. W. (2d) 219.

(4) We have decided not to pass on the contention of appellant that the Act is unconstitutional in that it gives the recorder judicial power by conferring on him authority to release wages held under a garnishment, and that it violates the general law requiring justices of the peace to act as clerks of their courts by giving such power to the recorder. The petition does not allege any facts showing, nor is any reason advanced in the briefs showing, that this matter in any way affects the fiscal affairs of the county or any right of interest of the appellant.

The judgment is affirmed in part and reversed in part for further proceedings consistent with this opinion.

The whole court sitting, except Judge Stites.