## Estill County v. Noland, County Judge.

June 25, 1943.

754

Shumate & Shumate and J. M. Wolfinbarger for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The case is resolved, through many amended petitions and a cross petition, to one by the County Attorney, directly and by appeal from the orders of the Fiscal

Court, and a taxpayer to have it adjudged that the county had no authority to pay part of the salary and expenses of one called a "Child Welfare Agent" during the fiscal year now drawing to a close on June 30th. The circuit court held that the Fiscal Court had the right to make the appropriation and rendered a consistent judgment.

The points of attack upon the appropriation may be thus summarized: (1) So much of Chapter 17, Acts of 1928, published as Sections 331L-15, and 331L-16, Kentucky Statutes, as purports to authorize a fiscal court to make an appropriation for a County Children's Bureau or Executive Secretary for such Bureau is unconstitutional because such provisions are not embraced in the title; (2) no Children's Bureau or office of Child Welfare. Agent was ever legally established by the county; (3) there was no legal authority for the appropriation; (4) the appropriation is void because it had the effect of increasing the county's debt beyond constitutional limitations and required an expenditure in excess of the revenues provided for the year; (5) the office or purpose is not an essential governmental function; and (6) the budget for the year beginning July 1, 1942, was not adopted according to law.

The Act of 1928 established the Kentucky Children's Bureau as a State administrative body, with a separate corporate existence, as successor to the Kentucky Child Welfare Commission. Chapter 17, page 129 of 1928; Sections 331L-1 et seq., Kentucky Statutes, Edition of 1936. Among other duties the Bureau was authorized to assist in the establishment of County Children's Bureaus and to co-operate with them in accomplishing the purposes of helping and promoting the welfare of children who are dependent, neglected, delinquent, defective or handicapped, physically, or mentally, and to aid needy mothers. By the Reorganization Act of 1934, the Bureau was abolished and all of its duties and functions were vested in the Department of Public Welfare. Chapter 155, Article XIV, Section 2, Acts of 1934, published as Sections 4618-35, 4618-101, Kentucky Statutes.

It is provided in Section 15 of the Act (Section 331L-15, Kentucky Statutes) that the fiscal court of any county may appropriate funds to be paid out of the county levy for the payment in whole or in part for the care or treatment of such children committed from the county.

Section 16 of the Act, Section 331L-16, Kentucky Statutes, provides that ''The fiscal court or the county commissioners of any county, with the advice and assistance of the Kentucky children's bureau, shall establish for such county a county children's bureau.'' When that has been done it prescribes that the county judge and the county superintendent of schools shall submit to the State Bureau a list of persons from which the State Bureau shall recommend three of them (five in more populated counties) who shall then be appointed by the county judge and superintendent of schools as members of the County Children's Bureau. They serve without compensation. The section concludes: ''The fiscal court or county commissioners of each county are hereby authorized and empowered to provide funds for the establishment and maintenance of the said county bureau.''

Subsequent sections provide for the organization and operation of the County Bureau. Its duties are particularly defined. Some of them are performed in co-operation with or as agencies of the State Bureau, now the Department of Public Welfare. We are particularly concerned here with Section 18 of the Act (Section 331L-18, Kentucky Statutes) which is as follows:

''The county children's bureau shall have authority to appoint an executive officer whose qualifications for the position shall have been approved by the Kentucky children's bureau and who shall be known as the executive secretary of the bureau. The executive secretary shall have such salary as may be fixed by the county children's bureau and shall serve during its pleasure. The executive secretary may appoint such properly trained assistants as may be authorized and approved by the county children's bureau, at such salaries as may be designated by it. The county children's bureau is authorized to pay, out of such sums as may be appropriated to pay its use by the fiscal court or county commissioners of the county, the salaries of its executive secretary and his or her assistants and the necessary traveling expense of its members, executive secretary and other agents and such other expenses as are incidental to the discharge of its lawful duties. The county children's bureau of two or more counties, with the approval of the fiscal court or county commissioners of their respective counties, may unite in the employment of an executive secretary and such other assistants as may be deemed necessary, and

shall agree upon the part of the total expense which each county children's bureau shall pay.''

1. The title of the Act of 1928 is as follows: ''An Act to promote the welfare of the delinquent, neglected, dependent or defective children of the State; repealing Chapter one hundred and seven of the Acts of one thousand nine hundred and twenty-two and abolishing the Kentucky Child Welfare Commission created thereby; creating in its place a bureau with the duties, functions, rights and powers of the Kentucky Child Welfare Commission to be known as 'The Kentucky Children's Bureau,' and defining and prescribing its duties and functions; providing for the creation of children's bureaus in each county, and defining and prescribing their duties and functions; providing for the establishment of a County Mother's Aid Fund in each county to be administered under the County Children's Bureau; providing for the administering of Mother's Aid throughout the State; making an appropriation for the benefit of the Kentucky Children's Bureau and authorizing county levies for the establishment of County Mothers' Aid Funds.''

It is argued that this title is restrictive and not general, so that any specific provision in the act not referred to in the title must be held invalid. It is pointed out that the title mentions the ''establishment of a County Mother's Aid Fund in each county'' and states that the act is one ''authorizing county levies for the establishment of County Mothers' Aid Funds,'' and does not make any mention of any county levy or appropriation for the establishment or maintenance of a County Children's Bureau or the payment of the salary of a child welfare worker or an executive secretary of the County Child's Bureau.

If the title is regarded as wholly specific, the point is well made for it was not constitutionally proper to include in the body of the act anything not within the specifications of the title. Jefferson County Fiscal Court v. Thomas, 279 Ky. 458, 130 S. W. (2d) 60. The title does disclose that the act provides for the creation of Children's Bureaus in each county and defines and prescribes their duties and functions. It was a reasonable assumption that such a comprehensive declaration was likely to carry provisions for financing those bureaus or agencies, so it cannot be said that the title was deceptive. We

think the provision that the counties should provide funds for children's bureaus, when established, was within the purview of the title.

2. The Fiscal Court of Estill County never entered an order establishing a Children's Bureau. It will be observed that the statute provides that such bureau shall be established by that body. When that shall have been done the machinery for choosing its personnel goes into operation and the bureau begins to function. There is no other duty placed upon the fiscal court except to provide funds therefor. For several years prior to 1937, the Fiscal Court had made an appropriation of $50 a month to supplement the compensation of Mrs. Hallie Johnstone, a representative of the Red Cross doing social work in Estill County. In June, 1937, the county judge and superintendent of schools proceeded substantially in the manner outlined by the statute to recommend to the Department of Public Welfare and then to appoint a County Children's Bureau of three members. They elected Mrs. Johnstone "County Social Worker." In the fall of 1938, there was a closer adherence to the method prescribed by advising the Department that they had established a child welfare program and chosen Mrs. Johnstone as executive secretary, which is the title given by the statute. This was approved by the Commissioner of Welfare and the Federal Children's Bureau, and those bodies made allotments to Estill County for the purposes designated in the Statutes. The personnel, including Mrs. Johnstone, was reappointed in 1941. It does not appear that the County Children's Bureau has kept an official record of these and later actions concerning its organization as should have been done, since it is a public body and public bodies usually speak only through their records. The original correspondence with the Department of Public Welfare was introduced to prove what had been done.

During these years the fiscal court regularly made appropriations for Mrs. Johnstone's salary and traveling expenses and for supplies in supplement of the allotment and salary made by the State Department of Public Welfare and the Federal social agency, working with and through that department. She has been variously called in the orders of the Fiscal Court, "County Distributor," "County Welfare Worker," "County Welfare agent," and "Executive Secretary." At a special session, held

July 14, 1942, the Fiscal Court, among other important transactions, made the tax levies and adopted the budget for the county for the fiscal year which had begun July 1st. The budget had been prepared by a County Budget Commission and approved by the State Department of Revenue through the State Local Finance Officer. Section 938q-13, Kentucky Statutes Supp. 1939. The budget carried an item of appropriation of "Child Welfare Agent's salary, $750.00." It also had several items for "Public Charities" which apparently embraced funds for children's care, and had a special item of $800 for "Mothers' Aid." In addition the Fiscal Court unanimously adopted the following resolution:

"Whereas, an order has heretofore been made for the maintenance of the Child Welfare Department and for the payment of Mrs. Hallie Johnstone, in charge thereof, the sum of $720.00 (sic) per year, payable monthly, of which sum she pays back $10.00 per month as rent for offices; and, further, some legal question having been raised as to the validity thereof,

It is now ordered that said appropriation be, and the same is, hereby made for the maintenance of the Child Welfare Department for one year for the sum of $720.00, with provision that $10.00 per month is to be repaid to the county for rent, and the clerk of this court will draw monthly vouchers payable to Hallie Johnstone for $60.00 per month, which vouchers shall be paid by the county treasurer."

The absence of an order of the Fiscal Court expressly establishing a County Children's Bureau and other loose methods of procedure, as well as the absence of formal records of the County Children's Bureau, with the carelessness evidenced thereby, are not to be sanctioned. But the organization and operation of such a bureau were established facts. In recognizing and impliedly approving what had been done by the county judge and school superintendent with reference to the personnel of the Children's Bureau without an initial authorization, we think the Fiscal Court ratified their action and the effect was the same as if it had been done antecedently. It is generally recognized that a fiscal court may ratify and confirm any action of an agent whom it might in the first instance have appointed and authorized to do something if it was within its power to have done so previously; also that it may ratify and con-

firm a contract if it is legal in all respects except for the absence of an initial authority. J. I. Case Threshing Machine Company v. Commonwealth, 177 Ky. 454, 197 S. W. 940; City of Ashland v. Queen, 254 Ky. 329, 71 S. W. (2d) 650; Lawrence County v. Stewart, 287 Ky. 827, 155 S. W. (2d) 446.

In the recent case of Estill County v. Noland, 292 Ky. 698, 167 S. W. (2d) 707, involving the creation of a Health Department for Estill County and the validity of an appropriation of $1,400 made at the same session and in the same manner as the appropriation attacked in this case, we held the appropriation invalid. In effect, that was to deny the power to ratify the order creating a Health Department entered at a special term. The cases are different. The statutes expressly provide that a County Health Department shall be created at a regular term of the fiscal court and that its action in doing so is subject to a referendum vote of the people. The statute relating to the establishment of a Children's Bureau is not restrictive in either particular. All that the Fiscal Court was required to do was to enter an order declaring that it created a Children's Bureau. That order would have been a formality and not so material and important as to require that it be done as an absolute condition precedent to the action by the two county officers who were delegated by the Statutes to set up the bureau. Had the Fiscal Court never formally recognized what they had done, we would have another case. But they did recognize it and we think the effect is the same as if they had created the bureau originally.

3. The argument that the Fiscal Court had no authority to make the appropriation is embraced in the other grounds.

4. It is disclosed that the outstanding general bonded debt of the county on July 1, 1942, was in round figures $16,500 above the constitutional limitation of indebtedness of 2% of the assessed valuation of taxable property, and that in addition there were outstanding warrants aggregating over $8,000, so on the face it appears that there was an excess debt of at least $24,500. Section 158, Kentucky Constitution. We pass over the appellees' response that the apparent excess indebtedness was created for necessary governmental purposes and that the entire debt is presumed to be valid; also that the care and maintenance of the poor mothers and

children covered by this service is a necessary governmental expense and must be incurred irrespective of the constitutional limitation. We consider the point that appropriations for current operation of the county do not constitute a debt within the limitations prescribed by Section 158 of the Constitution.

As we have stated, the budget for the current fiscal year was prepared in accordance with the requirements of the Statutes. It sets forth the sources and estimates of the revenue and allocates it among the many items of prospective expenses. The Fiscal Court at the time it adopted the budget made the tax levies for the year. With the assessments and the experience of the past year as to other revenues before them, it was calculated that the receipts and cash on hand would amount to $60,950. The budget appropriations aggregated the same sum. There is no intimation in the record that these estimates were unreasonable, and, since the budget was approved by the State Local Finance Officer and the rigid provisions of the statute were strictly observed in its preparation, it may be presumed that the expenses for the year will not exceed the revenues therein provided. Section 157 of the Constitution; Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321. We have held that the expenditure of money for a purpose not provided for in the budget is void if it results in the budget fund being exceeded. Noble v. Combs, 273 Ky. 578, 117 S. W. (2d) 579. Ordinarily an appropriation itself cannot be regarded as creating a debt if it be but the budgeting of an item of governmental expense. For example, if the services of a satisfactory executive secretary of the Children's Bureau could not be obtained during the year, the appropriation therefor would have lapsed. The obligation as a debt of the county is created if and when the money or revenues have been exhausted and a liability has been incurred. If this were not so, then there could be no appropriation by the General Assembly for the State government for the biennial period beyond the amount of cash on hand and the limitation of $500,000 permitted to meet casual deficits or failures in revenue. Sections 49 and 50 of the Constitution. It is the general rule, subject to varying restrictions and conditions, that an obligation for which an appropriation is made at the time of its creation from funds already in existence, or prospective and subject to appropriation, is not within the operation of a limitation of indebted-

ness. 30 Am. Jur., Municipal Corporations, Section 444, et seq.; Notes, 92 A. L. R. 1302; 134 A. L. R. 1400. Among the many cases cited in these notes in support of the rule are Rhea v. Newman, 153 Ky. 604, 156 S. W. 154, 44 L. R. A., N. S., 989; and State Budget Commission v. Lebus, 244 Ky. 700, 51 S. W. (2d) 965. It would not be appropriate here to make any observation as to whether or not the court would now give such a broad construction of Section 49 of the Constitution in relation to the meaning of ''casual deficits or failures in the revenue,'' as it did in Rhea v. Newman, supra. But we adhere to the general principle stated above, as do nearly all other courts considering the matter. 20 C. J. S., Counties, Section 225. It will always be a question of the extent and character of the restrictions or conditions. In relation to the county governments, we have the explicit statutory declaration that any expenditure in excess of the budget is invalid. Section 1851c-6, Kentucky Statutes, now KRS 68.300; Noble v. Combs, supra. Here the Fiscal Court made the tax levies at the same time with due regard for and a reasonable estimate of all the taxes and other revenues to be collected during the year and had ''cut its cloth'' according to that pattern. It is held by numerous authorities, including our own case of Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855 (in respect to State appropriations), that in such a situation the revenues may be reasonably anticipated and appropriated as being potentially in existence or constructively in the treasury. 38 Am. Jur., Municipal Corporations, Section 444; Notes, 92 A. L. R. 1306, 1308; 134 A. L. R. 1400. A common-sense, conservative view must be taken of the whole matter. In no event can the construction be extended or the law applied so as practically to render such limitation nugatory. Nor can it be given such extreme or strict application that it would hamper the fair, conservative and necessary operations of the county during the current year. Whatever obligation the fact of an appropriation carries, it runs concurrently with the collection of the revenues provided for the year; in other words, it is the observance of the pay-as-you-go plan. Cases may arise where a deficit has occurred notwithstanding there was a good faith, reasonable and prudent observance of the budget law. But that condition is not present in this record. It will be time enough to deal with the question when it arises. The question here is limited to whether

the prospective financial operations for the year—the revenues and appropriations being equal and running concurrently—adds to the pre-existing indebtedness. The suit was instituted and tried upon the basis of anticipation and we concur in the judgment of the trial court denying an injunction restraining the payment of the salary to the executive agent of the Children's Bureau.

5. The other ground of attack upon the action of the Fiscal Court and the county officers is that the budget was not adopted according to law. It appears to have been read and signed in substantial compliance with the statute relating thereto. Section 1851c-5, Kentucky Statutes, now KRS 68.260(1) required that the proposed budget be conspicuously posted in the court house and be published in a newspaper for at least ten days before final adoption by the Fiscal Court. It appears that the publication in the newspaper was only of the summary of the budget. It was limited to a statement of the estimated receipts and general sources, namely: "From 1942-43 Tax Levies"; "Delinquent tax receipts"; "Truck License Distribution"; and "Cash Balance," with the amounts expected from each source. It also showed the estimated expenditures under the general captions of "General Government"; "Protection to Person and Property"; "Health and Sanitation"; "Hospitals, Charities and Correction"; "Miscellaneous, General Fund"; "Highways, Road and Bridges," "Bond Debt Service," and "Special Funds." The thought running through all the uses of the words "publish" and "publication" in such connections is an advising of the public or the making known of something to the public for a purpose and the act is deemed sufficient if it gives notice to the public of any matter desired to be brought to its attention. 50 C. J. 870. Compare Nichols v. Rogers, 292 Ky. 428, 166 S. W. (2d) 867. Considering the volume of such budgets we do not think the statute was intended to require that the entire detailed budget be published in a newspaper. It was posted in the court house so that any interested person had the opportunity of examining the details. We think the publication was sufficient.

The judgment is affirmed.

Whole Court sitting.