Robert M. Brantly Director Florida Game and Fresh Water Fish Commission Tallahassee
QUESTION:
Would press releases be `public documents' within the purview of s. 257.05, F. S., and therefore require the statement of costs under s. 283.27, F. S., when a state agency sends over 500 copies to various news media?
SUMMARY:
The issuance and delivery of press releases by state agencies is not a promulgation of a public document within the meaning of s. 283.27(1), F. S., and a press release issued by a state agency is not a periodic or special report or publication of a state agency within the meaning of s. 257.05(1), F. S. Therefore, the cost and purpose data requirement set forth in s. 283.27(1), F. S., does not apply to such press releases by a state agency.
For purposes of this opinion, it is assumed that the Game and Fresh Water Fish Commission is authorized by law to engage in public relations and educational activities and functions. (See s. 9, Art. IV, State Const., as to the regulatory and executive powers of the commission, which, pursuant to s. 372.021, F. S., are to be exercised by the adoption of rules and regulations or otherwise in its discretion, and Rules 16E-30.01(2), 16E-30.02(2) and (3), 16E-30.04(1) and (5), and 16E-30.13(3), F.A.C., relating to the information, education, and promotion functions of the commission.)
Section 283.27(1), F. S., was brought into the statutes by Ch.72-377, Laws of Florida, which was an act relating to public documents and providing that every state agency which promulgates public documents must cause a statement of cost data and purpose to be reflected on each publication. The body of the act in pertinent part provides:
 Every department or agency of the state which promulgates public documents as defined in subsection (1) of Section 257.05, Florida Statutes, shall cause the following statement . . . to be printed on the publication . . . .
Chapter 283, F. S., generally pertains to public printing, including reports of state agencies and other documents.
Subsection (1) defining `public document' was added to s. 257.05
by Ch. 67-233, Laws of Florida, which was an act relating to the State Library and Historical Commission and authorizes the State Library and Historical Commission (now the Division of Library Services of the Department of State) to provide for the distribution of public documents and legal publications to depository libraries. The body of that act defines a `public document' as referred to in s. 257.05 as: `. . . any annual, biennial, regular or special report or publication of which at least five hundred (500) copies are printed and which may be subject to distribution tot he public.' This definition in its statutory context and history necessarily is concerned with and limited to state documents and publications issued and published by the state through its officers, departments, boards, courts, or other agencies of the state. It may also be noted that ss. 283.22 and 283.23, F. S., respectively relating to general libraries of institutions in the State University System and to certain law libraries, refer to `each officer of the state empowered by law to distribute such public documents' or `legal publications,' respectively, in authorizing such state officers to transmit copies of such documents and publications to such libraries and state legal depositories. All such documents and publications are, of course, by necessary implication required to be published by or under the authority of the state, i.e., under the authority of the duly enacted acts of the State Legislature. See State ex rel. Greenberg v. Florida State Bd. of Dent., 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974); Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1970); AGO 071-28; andsee generally 67 C.J.S. Officers ss. 102a., 103 and 81 C.J.S.States s. 58.
In view of the foregoing, it would appear that the public or state documents which are the subject of s. 283.27, F. S., and defined in s. 257.05(1), F. S., mean those state documents and publications issued and published by the state through its officers and its agencies, institutions, and instrumentalities under and in accordance with the statutory law and reports of officers and agencies of the state authorized or required by state laws and which are distributed or may be subject to distribution to the public and to those state agencies, institrutions, instrumentalities, and depositories designated in and provided for by Chs. 257 and 283, F. S., respectively. Cf. AGO 073-147 holding among other things that a manual of instructions for tax assessors (property appraisers) required by statute for a specific purpose and not intended for distribution to anyone other than state and local officials connected with the administration of property taxes was not subject to distribution to the public and therefore was not a public document within the meaning of, or for the purposes of, s. 283.27(1).
To fall within the requirements of s. 283.27(1), F. S., a state department agency must promulgate public documents. The word `promulgate' generally means `publish.' United States v. Stoehr,100 F. Supp. 143, 164 (M.D.Pa. 1951) and 73 C.J.S. Promulgate, p. 131. See also Black's Law Dictionary p. 1380.
Carrying this definition further, the word `publish' generally means to give to the public. Reimel v. Alcoholic Beverage Control Appeals Board, 257 C.A.2d 158 (Cal. 1967); Estill County v. Norlend, 175 S.W.2d 341, 346 (Ky. 1943). While the meaning of the term `publish' may depend on the subject with which it is connected, it has been said that the word is usually associated with printing by book, circular, pamphlet, or newspaper or the like. See 73 C.J.S. Publish, p. 1250. See also Black's Law Dictionary 1397 Publish. Equating `publish' with the term `promulgate' appears to be in keeping with the context of s.257.05 and Ch. 283, F. S., generally and s. 283.27(1), F. S., in particular which goes on to require that cost and purpose data `beprinted on the publication adjacent to the identification of the agency responsible for publication . . . .' (Emphasis supplied.) The definition of `publication' lends further support for this construction.
 Inseparable from the term [publication] is the idea of publicity, circulation, and intended distribution, and the thought running through all the uses of the word is an advising of the public, a making known to the public for a purpose . . . . [73 C.J.S. Publication, p. 638.]
The term ordinarily means the act of making public or known, William G. Meier Glass Co. v. Anchor Hocking Glass Corp.,95 F. Supp. 264, 267 (D.C. Pa. 1951), and in its ordinary acceptance means to print, or cause to be printed, and to issue from the press either for sale or general distribution as a book, newspaper, piece of music, engraving, etc. Tiffany Publications v. Deming, 50 F.2d 911, 914 (D.C. Md. 1931); see also Black's Law Dictionary 1396, Publication. In this sense `publication' means that which is published or made known to the public either by writing or printing, as a book or print which has been published and made public. 73 C.J.S. Publication, p. 638.
Press releases do not readily fall within any such definitions. Courts have generally characterized press releases in the nature of announcements, and not publications or public documents. In Glass v. Ickes, 117 F.2d 273 (D.C. Cir. 1940), cert. denied,311 U.S. 718 (1941), press releases were characterized as `. . .announcements [which] serve a useful if not an essential role in the functioning of the democratic processes of government.' (Emphasis supplied.) Id. 117 F.2d at 278 n. 9. In Reed v. Morton,480 F.2d 634 (9th Cir. 1973), cert. denied, 414 U.S. 1064 (1973), the court described a press release as `. . . an announcement of the fact of lower echelon governmental action, nothing more.' (Emphasis supplied.) Id. 480 F.2d at 642 n. 9. In F.T.C. v. Cinderella Career and Finishing Schools, Inc., 404 F.2d 1308 (D.C. Cir. 1968), Judge Robinson comprehensively discussed the use and function of press releases by a governmental agency:
 . . . `The effective functioning of a free government like ours depends largely on the force of informed public opinion.' Relatively few matters attract more readily the interest of the people than what government is doing for the people. News releasing by the agencies of government has become a standard technique in the operations by which the people are kept knowledgeable as to governmental affairs. Press releases by public officials, we have said, `serve a useful if not essential role in the functioning of the democratic processes of government.'
 An incidental and wholesome consequence of general publicity of proceedings challenging the fairness and honesty of particular commercial practices may well be the generation of a desirable if unnecessary measure of public caution in dealings with those identified with such practices. Publicity, or the specter of publicity, may also, in a very practical way, achieve on its own a degree of informal regulation by deterring those who otherwise might be tempted to take liberties with the law. But beyond these factors is the consideration that the business of an important governmental agency is everybody's business. The people want to know, and are entitled to know, what goes on in government, and the thirst for information is not limited to those who may have or may contemplate a direct commercial relationship with the subject of governmental concern at the moment. The activities of the Federal Trade Commission constitute news, and any restriction upon its machinery for public accessibility to that news must be taken for what it really is. [Id. at 1317-1318; footnotes omitted.]
 While recognizing that press releases provide a valuable means of serving the public interest by informing the public of governmental action, courts have not gone so far as to characterize press releases themselves as publications or public documents.
 Similarly, Webster's Seventh New Collegiate Dictionary 673 (7th Ed. 1963) defines press release not as a publication but only as `any material given or sent to a newspaper before a prearranged date of publication.' Indeed, if press releases were construed as printed state publications or reports, the release would certainly fall within the definition of Class B public printing set forth in s. 283.04, F. S., and each press release or purchase in excess of $50 of such printing would therefore require individual competitive bids and contracts under regulations adopted by the Division of Purchasing of the Department of General Services under s. 283.10 and s. 287.102, F.S. There is nothing within the legislative definition of public document which warrants such a result. Other sections of Ch. 283 provide relevant examples of the types of state documents considered to be promulgated by state agencies for purposes of this chapter. These include annual and biennial reports of state agencies as required by law, s. 283.101; general laws, special acts, memorials and resolutions of the Legislature, and pamphlet-form copies of general acts of the Legislature, s. 283.12; journals of the Legislature, s. 283.15; pamphlet copies of the general laws, s. 283.18; and copies of reports of state officers and agencies, volumes of periodic reports of cabinet officers and copies of reports or other publications by state boards or institutions, ss. 283.22 and 283.24. As indicated above, press releases do not possess the same characteristics as public documents or publications of this type.
 Moreover, Ch. 283 further provides for the storage of these documents in libraries of the State University System, s. 283.22, in designated law libraries and state legal depositories, s. 283.23, for the exchange of such documents with other states, s. 283.22, and authorizes and directs distributions of such documents tot he Library of Congress, at such time as the same are published and made available for public distribution, s. 283.24.
 Section 257.05, F. S., further provides for the furnishing to the Division of Library Services of the Department of State 25 copies of public documents issued by state officers and agencies for deposit in and distribution by the division to designated state depositories for such documents and authorizes the exchange of such copies of documents for those of other states and countries. These statutes indicate a legislative concern to preserve and distribute state documents of informational and historical significance to the state, to state government, and to the public. In this context, it does not appear under the usual and customary definition of the terms that the announcement or delivery of a press release rises to the level of a `promulgation' of a public document as contemplated by s. 283.27(1), F. S.
 Assuming, however, that the term `promulgate' is broad enough to include the issuance and delivery of a press release, s. 283.27(1), F. S., before becoming operative, imposes the additional requirement that a press release be a `public document' as that term is defined in s. 257.05(1), F. S.
 The statutory definition of `public document' in s. 257.05(1) refers to `any annual, biennial, regular or special report or publication of which at least 500 copies are printed. . . .' (Emphasis supplied.) `Annual' and `biennial' in this context mean yearly or once every two years, and connote periodic reports or publications. See 3A C.J.S. Annual, p. 862 and 10 C.J.S. Biennial, p. 358. In some instances the Legislature has specifically required such reports. See, e.g., s. 624.315, F. S., relating to reports of the Department of Insurance and s. 947.15, F. S., relating to reports of the Parole and Probation Commission.
 Similarly, the term `regular' also connotes a periodic occurrence, usually steady or uniform in course. See 76 C.J.S. Regular, p. 608. The Legislature has expressly required such reports to be submitted by some departments or agencies of the state. See, e.g., s. 20.315, F. S. As indicated above, however, a press release is not characterized by issuance on a periodic or uniform basis, but instead is inherently bound to the particular news event it announces. Thus, the remaining statutory category under s. 257.05(1), F. S., which might be applicable to a press release is that of a `special report or publication.'
 The word `special' generally means `distinguished by some unusual quality; uncommon; noteworthy; extraordinary.' Board of Trustees of Public Employees Retirement System v. Lowry, 88 So.2d 585, 589 (Miss. 1956). See also 81 C.J.S. Special, p. 898. In this context, press releases have not been characterized as unusual, uncommon, extraordinary, or noteworthy functions of government, but as normal informational techniques of government. F.T.C. v. Cinderella Career and Finishing Schools, Inc., supra; see also Barr v. Mateo, 360 U.S. 564, 576 (1959), Black, J. concurring opinion. In light of the accepted use and functions of press releases, there is no basis to construe such announcements as special or extraordinary in nature.
 Additionally, under s. 257.05(1), F. S., the statutory regulations of s. 283.27, F. S., do not become operative unless the state agency prints 500 copies of a report or publication, and also makes such reports or publications subject to distribution to the public. Your question assumes that the state agency prints 500 copies of a press release and that the agency itself also sends the 500 copies to various news media. The question then becomes whether distribution to news media is equivalent to distribution to the public under the statutes.
 `Distribution' is a word of many definitions, but usually means to dispense, or in another accepted sense, to transfer ownership. See 27 C.J.S. Distribution, pp. 615-616. The meaning of the phrase `to the public' was examined in a similar context in the construction of s. 283.28, F. S., as discussed in AGO 076-76. In that opinion, it was recognized that the term `public' does not have any definite or fixed meaning, but depends for its meaning on the context in which it is used. That opinion concluded:
 Thus, it appears that the term `public' as used in s. 283.28, F. S., has reference to those entities and persons other than governmental entities and officials whose names appear on any one or more mailing or subscribers' lists kept and maintained by the agency to be used by it in making the periodic distributions of printed material without charge to such entities and persons.
The meaning of the phrase `to the public' was also discussed in a somewhat similar context in AGO 073-147, supra, where it was held that a manual of instructions for the tax assessors prepared by the Department of Revenue to instruct and assist taxing officials in the administration of property taxes was not a document `subject to distribution to the public' within the meaning of s.257.05(1) and, accordingly, the statement of cost and purpose data of s. 283.27(1) was not required. There it was observed that general public distribution would be inconsistent with the statutory purpose of the promulgation of the tax assessor's manual.
In the same manner, the press release itself is actually intended for distribution to the news media, which may or may not publish or broadcast the information contained therein. Therefore, while the information contained in a press release may ultimately be disseminated or distributed to the public, distribution to the public is within the discretion of the news media, and the press release itself is intended for the news media, and the transfer of the press release is to the news media. Indeed, by the time information, or any portion thereof, contained in the press release is reproduced by the news media, it is the product and property of the particular news media. See International News Service v. Associated Press, 248 U.S. 215 (1918). Accordingly, in final form, the information distributed to the public is subject to journalistic license which, depending on the individual news account, makes it difficult and unwarranted to characterize a press release as being directly distributed to the public.
For the foregoing reasons, I am of the opinion that the issuance and delivery of press releases by state agencies does not constitute the promulgation of a public document within the meaning of s. 283.27, F. S., and that a press release is not a periodic or special report or publication of a state agency within the meaning of s. 257.05(1), F. S.
Prepared by: Richard A. Hixson, Assistant Attorney General